UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Barbara J. Renneker,  : Case No. 1:10-cv-386
:
    Plaintiff,  :
:
vs.  :
:
Michael J. Astrue, Commissioner  :
of Social Security,  :
:
    Defendant.  :

**ORDER**

    Before the Court are the parties' objections to the Report and Recommendation of the Magistrate Judge. (Docs. 15, 16) The Report recommends that this matter be remanded to the Commissioner for additional review and findings, pursuant to Sentence Four of 42 U.S.C. §405(g). Plaintiff objects, contending a remand is unnecessary and that the record demonstrates that she is entitled to an award of benefits. The Commissioner also objects, contending that the ALJ properly considered the totality of the evidence in determining Plaintiff's residual functional capacity, and in concluding that Plaintiff was not disabled.

    For the following reasons, the Court adopts the Report and Recommendations of the Magistrate Judge.

-1-

**FACTUAL BACKGROUND**

Plaintiff was 35 years old when the ALJ issued his decision. She alleged that she was disabled based on mental disorders, anxiety and panic attacks, and a heart murmur. The Magistrate Judge thoroughly and ably described Plaintiff's medical history as reflected in the medical records from 2005 through 2009. The records document her history of emergency room visits complaining of anxiety, manifested by racing heart or by a feeling that she is "going crazy." These visits occurred with some frequently from March through October 2005, and at various times she was prescribed Ativan and/or Xanax to control her anxiety.

In May 2006, she went to the emergency room complaining of anxiety and suicidal thoughts, and stated she had not taken medication for over a year. She was placed in an inpatient hospital for two days, where she reported heavy alcohol use in the past, and some history of benzodiazepine abuse. She was discharged with a diagnosis of mood disorder, history of sedative dependence and chronic headaches, and given Lamictal and Seroquel. In several subsequent emergency room visits, she gave some inconsistent descriptions of her medication usage. She admitted in November 2006 that she had consumed seven beers the evening she visited the emergency room complaining of depression and suicidal thoughts. During her December 9, 2006 emergency room visit for anxiety and difficulty breathing, she stated that

Valium had helped her with those symptoms in the past, but that she was not on any medication at that time. Her mental status was within normal limits, and she exhibited appropriate affect and logical thoughts. She was again diagnosed with acute anxiety and panic disorder and given Valium. (TR 275-276)

In February 2007, in connection with an application for public assistance, Plaintiff was examined by Dr. Staskavich, a psychologist, who concluded that she had marked limitations in her ability to comprehend work instructions, to interact with the public or co-workers, or respond to changes. Dr. Staskavich also found her to be extremely limited in her ability to understand and carry out instructions, maintain concentration, perform scheduled activities, sustain an ordinary routine, complete a normal workday or workweek, and accept instructions. (TR 254) Dr. Staskavich believed that plaintiff was unemployable.

Plaintiff was referred by the hospital to Dr. Kenneth Tepe in March 2007, who diagnosed her with panic attacks and directed her to follow up with treatment for alcohol abuse. He prescribed Klonopin for her anxiety. Dr. Tepe also referred her for an evaluation in the transitional living program, where Dr. Brengle reported that she has recurring depression, anxiety, panic and alcoholism. Plaintiff reported to him that "[s]he cannot keep a job due to anger and conflict with others." Due to a lack of an additional staff psychiatrist, however, the transitional program

was not able to offer her assistance.

Her pattern of emergency room visits continued through 2007 and 2008, but she also sought assistance from an outpatient mental health center in January 2008. Her initial evaluation found no cognitive impairment and that she had logical thoughts, and she was diagnosed with generalized anxiety disorder and a history of major depression. By the end of February she reported to the therapist that she believed she would be able to work. (TR 428) However, over the next several months, she again visited the emergency room several times complaining of anxiety. In May 2009, the outpatient clinic performed a psychiatric evaluation, and she was started on Celexa. In July 2009, she reported that the Celexa was helping with her mood swings, but not with her anxiety.

After her disability claim was initially denied, the ALJ conducted an evidentiary hearing on July 20, 2009. Plaintiff testified that at the time, she had a regular psychiatrist, and was prescribed citalopram for depression and diazepam for anxiety. She described her panic attacks as occurring daily. She told the ALJ that she had visited the emergency room even during the times that she had been taking her prescribed medication. She reported that she stopped using alcohol in 2007, and that the police had taken her to the hospital in December 2008 after she tried to hurt herself. (TR 34)

In his October 7, 2009 decision, the ALJ concluded that Plaintiff was not disabled based on his assessment of her residual functional capacity. (TR 9-16) The ALJ reached his decision by performing the required sequential evaluation procedure. At step two, the ALJ found Plaintiff to have severe impairments of an affective disorder, an anxiety disorder, a borderline personality disorder, and alcohol dependence based on her treatment records. He concluded that she has no severe physical impairments. He further concluded that the impairments identified did not meet or exceed the listed mental impairments of sections 12.04, 12.06, 12.08, 12.09, or any other applicable Listing. There are no objections to these findings.

The ALJ then determined that Plaintiff has the residual functional capacity to perform a full range of work at any exertional level, with the following non-exertional limitations: "The claimant is able to remember and carry out only short and simple instructions. She cannot interact with the general public, or interact more than occasionally with coworkers or supervisors. The claimant cannot work at a rapid production-rate pace, or perform a job that requires a strict production quota. Her job should not require more than ordinary and routine changes in work setting or duties, or more than simple work-related decisions." (TR 12)

The ALJ further concluded that Plaintiff's impairments could

reasonably cause her alleged symptoms. But he found that her descriptions about the intensity, persistence, and limiting effects of her symptoms were not entirely credible. He explained that it "... seems clear from the records that the claimant mainly has difficulty when she is out of medications or using alcohol." (TR 13) This was based on several of the emergency room visit notes in which she reported running out of medications, her inconsistent reports about what medications she had been taking and when, and her reports about the extent of her drinking. The ALJ further noted that when Plaintiff was "compliant with treatment and medications, the claimant functions quite well." (TR 14) This observation was also based on some of the emergency visit notes, during which her memory and concentration were noted to be intact, and notes from her mental health counselor in early 2008 and again in June 2009 that Plaintiff appeared to be functioning well and was able to concentrate.

With regard to her functional limitations, the ALJ cited the state evaluators' findings, particularly those of Dr. Semmelman who found that Plaintiff could cope with ordinary work settings that is not fast-paced or of high demand. (TR 298) Dr. Semmelman also opined that Plaintiff can understand and follow one-to-three step uncomplicated oral and written directions, and can interact occasionally and superficially with others. The ALJ

noted the evaluation by Dr. Staskavich, who found marked and extreme functional limitations, but discounted it because it was a one-time exam, and there was no indication from the evaluation whether Plaintiff was taking prescribed medications at the time of that visit.  He also concluded that Staskavich's diagnoses and the extreme findings were not consistent with the other medical evidence, and gave her conclusions little weight.  The state evaluators were given greater weight, because "...[t]hey are more in tune with the evidence as a whole and the signs and findings therein."  (TR 14)  Based upon the vocational expert's testimony that there were a substantial number of jobs in the regional and national market that Plaintiff was capable of performing, the ALJ concluded that Plaintiff is not disabled.

After the Appeals Council denied review, Plaintiff timely filed suit in this Court.

### DISCUSSION

Under 42 U.S.C. §405(g), this Court reviews the Commissioner's decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion."  <u>LeMaster v. Secretary of Health and Human Serv.</u>, 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than

create a suspicion of the existence of some fact to be established. Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury. Id.

If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981). The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. "An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo a magistrate judge's report and recommendation regarding Social Security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

The Magistrate Judge concluded that the ALJ failed to properly consider and evaluate Plaintiff's noncompliance with treatment and prescribed medications, in light of the severe impairments he found Plaintiff to have. The Magistrate Judge noted that ALJ's observation that Plaintiff only has difficulty

"when she is out of medications or using alcohol" is not supported by a medical opinion justifying the ALJ's apparent correlation between Plaintiff's non-compliance and her functional ability.

It is undisputed that a claimant must follow recommended prescribed treatment and will be denied benefits if she fails to do so without good reason.  See 20 C.F.R. §416.930(b).  But the Magistrate Judge noted that when dealing with mental disorders, a failure to seek or adhere to prescribed treatment may itself be a symptom of a disorder, citing White v. Comm'r of Soc. Sec., 572 F.3d 272 (6th Cir. 2009).  The ALJ cited Plaintiff's statement that she takes her medications "the way you're supposed to" in finding her testimony was not credible, but he did not fully explore or consider her testimony that she visited the emergency room even while she was taking prescribed medications, or that she had a bad reaction to many drugs that had been prescribed to her over the years.  The Magistrate Judge cited Social Security Ruling 82-59, which instructs that in situations evaluating compliance with treatment, the claimant should be given the opportunity to explain the reasons, and that "[d]etailed questioning may be needed to identify and clarify the essential factors of refusal. ... Individuals should be asked to describe whether they understand the nature of the treatment ... [and] should be encouraged to express in their own words why the

recommended treatment has not been followed." (Doc. 14 at p. 22, quoting from SSR 82-59 (1982)).

The Commissioner objects to this conclusion, arguing that the ALJ was simply and properly drawing conclusions directly from the evidence in the medical records.  His citation to a few of the records in which examiners questioned Plaintiff's credibility, and which documented a number of noncompliance indications without a finding that her noncompliance was **caused** by any of her disorders.  The Commissioner notes that there is no record of any disturbed thought processes or serious impairments in judgment that could excuse this conduct.

The fact that disturbed thoughts were not observed or recorded by any treating source does not automatically support the conclusion that Plaintiff's noncompliance was willful or not the result of her impairments, as the Commissioner suggests. Plaintiff's severe impairments include an affective disorder, anxiety disorder and personality disorder, accompanied by alcohol dependence, and the ALJ found that those impairments could reasonably be expected to cause her symptoms.  As the Magistrate Judge noted, it is not uncommon for claimants with mental impairments to fail to adhere to prescribed treatments, or to exercise poor judgment in not seeking treatment for their conditions.  Yet the ALJ did not address this situation, and appeared to heavily rely on Plaintiff's testimony that she did

-10-

take her prescribed medications.  While it is clear that, as the fact-finder, the ALJ is the ultimate arbiter of a claimant's credibility, the Magistrate Judge correctly notes that the ALJ did not sufficiently delineate his credibility findings and his RFC assessment in light of his concern that Plaintiff was noncompliant.  Moreover, there is no medical opinion in the records that supports the ALJ's conclusion with respect to Plaintiff's ability to function when she is compliant.

Moreover, the Court notes there are several references in the medical records to Plaintiff's financial situation which prevented her access to drug refills and/or to physicians.  (See, e.g., TR 182, ER report 11/24/2006, noting that Plaintiff is "self pay" and stating she "ran out of Klonopin" earlier that month; TR 188, ER report 10/05/2006, when she reported that "she does not get her insurance now for some time, and has not been able to afford getting medicine or following up with doctor since.")  And it is somewhat unclear, at the times Plaintiff reported she had run out of medicine, that she in fact had been noncompliant with prescribed regimens, because the dosing and frequency information for most of the prescriptions is not contained in the record.

The Commissioner also argues that additional testimony from Plaintiff would be futile, as she has already falsely testified that she took her medication the way she is supposed to.  For the

-11-

reasons discussed above, the Court overrules the Commissioner's objection. The ALJ's assessment of Plaintiff's credibility is intertwined with his assessment of her functional limitations. And the ALJ is not limited to taking additional testimony solely from the Plaintiff, and may request the submission of additional medical evidence if that is necessary to resolve the root cause of the noncompliance.

For these reasons, the Court agrees with the Magistrate Judge's recommendation on Plaintiff's first statement of error.

Plaintiff objects to the Magistrate Judge's conclusion that there was no error in the ALJ's refusal to accord controlling weight to the assessment of Dr. Staskavich, and/or to the opinions of the various doctors who treated her. The ALJ found the state reviewers' conclusions to be more consistent with the entirety of the medical evidence. Plaintiff concedes that most of the physicians, including Dr. Staskavich, were not treating physicians, but argues that the ALJ should have accorded greater weight to the opinion of Dr. Staskavich.

The Court agrees with the Magistrate Judge that there was no error in the ALJ's process of weighing the opinions. The Social Security regulations provide that a treating physician's opinion is entitled to controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record." 20 C.F.R. §416.927(d)(2). This regulation further instructs that, with regard to any medical opinion, "... the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. §416.927(d)(4). The Commissioner will generally give more weight to an examining source than to an examiner who reviews records, but the weight accorded to any opinion must be based on the evidence in support of the opinion, and its consistency with the record as a whole. Moreover, the ALJ need not accept a medical opinion that a claimant is "disabled" and unemployable, as that determination rests with the Commissioner under 20 C.F.R. §416.927(e)(1).

   Dr. Staskavich's opinion was based upon a one-time visit with Plaintiff and largely, if not exclusively, upon what the Plaintiff told her at that time. Plaintiff's visit was for purposes of public assistance, and Dr. Staskavich's handwritten notes of the visit (the typed version of which is in the record at TR 325) do not document any objective testing or conclusions other than her rather cursory observation that Plaintiff cannot work. None of the other doctors who have evaluated Plaintiff (Drs. Pisarka, Brengle, or Tepe) have offered any opinions on Plaintiff's functional limitations. The ALJ found that Dr. Semmelman's functional assessment was based on her review of the other doctors' observations and diagnoses, and the entirety of

the evidence available at the time. The ALJ did not reject the opinions of the other physicians, and relied on their diagnoses in finding that Plaintiff has severe impairments.

The Magistrate Judge also rejected Plaintiff's assertion that the ALJ was required to address Plaintiff's GAF scores, which she argues supports Dr. Staskavich's opinion that Plaintiff is disabled. There is no requirement that the ALJ address those scores, and the Sixth Circuit has noted that GAF scores are not dispositive of anything in and of themselves. See Oliver v. Commissioner of Soc. Sec., No. 09-2543, 2011 U.S. App. LEXIS 5610, at *9-10 (6th Cir., March 17, 2011) (unpublished), and citing 65 Fed. Reg. 50746, 50764-65 (2000) ("The GAF scale ... does not have a direct correlation to the severity requirements in our mental disorders listings."). Moreover, the five GAF scores in Plaintiff's records are spread over a five-year period, range from a low of 35 to a high of 60, and were all assigned based on one-time examinations, and Dr. Staskavich did not assign a GAF score during her examination. These five scattered scores do not standing alone indicate an impairment rendering Plaintiff disabled.

The Court agrees with the Magistrate Judge's recommendation, and concludes that the ALJ did not err in assigning the weight given to Plaintiff's examining medical sources.

**CONCLUSION**

For all of the foregoing reasons, the Court overrules both the Plaintiff's Objections and the Commissioner's Objections to the Magistrate Judge's Report and Recommendation.

The Court has reviewed the record de novo, and hereby adopts the Magistrate Judge's Report and Recommendation in full. The decision of the Commissioner denying Plaintiff's claim for benefits is reversed and this matter is remanded for further proceedings and receipt of additional evidence, pursuant to sentence four of 42 U.S.C. §405(g), including a determination of the specific issue of whether Plaintiff's noncompliance is a result of her severe impairments.

SO ORDERED.

DATED: June 28, 2011         s/Sandra S. Beckwith
                             Sandra S. Beckwith
                             Senior United States District Judge