# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BARBARA J. RENNEKER,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-386
Beckwith, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

This matter is before the Court on plaintiff's motion for attorney's fees under the Equal

Access to Justice Act ("EAJA") (Doc. 21), the Commissioner's response in opposition (Doc. 22),

and plaintiff's reply memorandum in support of his application for EAJA fees. (Doc. 25).

The EAJA provides for an award of attorney fees to a party who prevails in a civil action

against the United States "when the position taken by the Government is not substantially

justified and no special circumstances exist warranting a denial of fees." *Bryant v. Comm'r of*

*Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009) (citing 28 U.S.C. § 2412(d)(1)(A)).

On April 4, 2011, a Report and Recommendation was issued recommending that

plaintiff's case be reversed and remanded for further proceedings pursuant to Sentence Four of

42 U.S.C. § 405(g). (Doc. 14). On June 28, 2011, the District Court adopted the Report and

Recommendation and issued a final appealable order. (Doc. 19). Pursuant to the Equal Access

to Justice Act, 28 U.S.C. § 2412(d)(1)(B), an application for attorney fees and other expenses

must be submitted within thirty (30) days of final judgment. The EAJA defines a final judgment

as "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G); *see Buck v. Sec'y of*

*H.H.S.*, 923 F.2d 1200, 1202 (6th Cir. 1991). The thirty-day clock begins to run after the time to

appeal the final judgment has expired. *See Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991).

Plaintiff's application for attorney fees was filed on August 29, 2011 and was therefore timely.

(Doc. 21). This matter is now ripe for a decision on plaintiff's motion for fees.

The EAJA provides:

A court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Thus, eligibility for a fee award under EAJA requires: (1) that the

claimant be the prevailing party; (2) that the government's position was not substantially

justified; and (3) that no special circumstances make the award unjust.

**Prevailing Party**

The Equal Access to Justice Act allows for an award of attorney fees if the party is the

"prevailing party." 28 U.S.C. § 2412(d)(1)(B). A "party" is any individual whose net worth did

not exceed $2,000,000 at the time the civil action was filed. 28 U.S.C. §2412(d)(2)(B)(i). It is

undisputed that at the time this action was filed, plaintiff's net worth was less than $2,000,000.

Moreover, plaintiff became the "prevailing party" when she obtained a reversal and remand for

further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). *See Shalala v. Schaefer*,

509 U.S. 292, 300-302 (1993) (social security claimant who obtains a sentence four judgment

2

reversing denial of benefits and requiring further proceedings is "prevailing party" for purposes of EAJA).

## Substantial Justification

To be "substantially justified," the United States must show that it had a reasonable basis in law and in fact to undertake the challenged action. *Pierce v. Underwood*, 487 U.S. 552 (1988). The "substantial evidence" standard is not the same as the "substantial justification" standard under EAJA. The government's position "can be justified even though it is not correct . . ., and it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2. The Sixth Circuit has held that even though the government's position was not supported by substantial evidence, that fact "does not foreclose the possibility that the position was substantially justified. Indeed, Congress did not want the 'substantially justified' standard to be read to raise a presumption that the Government position was not substantially justified simply because it lost the case. . . ." *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) (internal citations and quotation marks omitted). Rather, under EAJA, substantial justification means the government's position was "justified in substance or in the main." *Pierce*, 487 U.S. at 565. In other words, the Court must determine whether the government's position was justified in law and in fact to a degree that would satisfy a reasonable person. *Id. See also Perket v. Sec'y of H.H.S.*, 905 F.2d 129, 132 (6th Cir. 1990); *Jankovich v. Bowen*, 868 F.2d 867, 869 (6th Cir. 1989) (per curiam). The Court must examine the government's litigation position as a whole to determine whether it had a reasonable basis in law and fact. *Cf. Comm'r, INS v. Jean*, 496 U.S.

3

154, 161-62 (1990) ("While the parties' positions on individual matters may be more or less justified, the EAJA--like other fee-shifting statutes--favors treating a case as an inclusive whole, rather than as an atomized line-items."). It is the government's burden under EAJA to prove that its position was substantially justified. *See Scarborough v. Principi,* 541 U.S. 401, 414-15 (2004). The "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

In the present case, the Court determined that the decision of the ALJ lacked substantial support in the record because the ALJ did not sufficiently delineate his credibility findings from his RFC assessment, there was no medical opinion in the record supporting the ALJ's conclusion that plaintiff functioned well when she was compliant with medication, and the ALJ did not seek additional evidence regarding plaintiff's noncompliance. The Court determined that a remand was required for further proceedings and receipt of additional evidence was necessary to address whether plaintiff's noncompliance was a result of her severe mental impairments. The Court rejected the Commissioner's contention that seeking additional testimony from plaintiff would be futile, given her prior contradicted testimony regarding her medication compliance, noting that the ALJ was not limited to seeking additional evidence from plaintiff and could request additional medical evidence to identify the cause of plaintiff's noncompliance. (Doc. 19, p. 12).

In arguing that his position was substantially justified for purposes of plaintiff's EAJA fee application, the Commissioner asserts that the ALJ made proper "common-sense observations" in concluding that plaintiff did well when compliant with medication. (Doc. 22, p.

4). However, as explained in this Court's Report and Recommendation, the medical opinions of record did not support the ALJ's conclusion that there was a causal connection between plaintiff's medication compliance and her functionality. (Doc. 14, p. 20). *See also* Doc. 19, p. 11 (The District Judge held that "there is no medical opinion in the records that supports the ALJ's conclusion with respect to Plaintiff's ability to function when she is compliant."). Accordingly, this determination by the ALJ was without any support in the medical evidence and the Commissioner's position about the ALJ's "common-sense observation" fails to acknowledge that ALJs "may not substitute lay observations for expert medical evidence." *Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807, 823 (N.D. Ohio 2009). *See also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The Commissioner's position in this regard lacks a reasonable basis in law and does not support a finding of substantial justification.

The Commissioner further argues that despite Social Security Ruling 82-59[1] the ALJ was not required to undergo further inquiry to determine the cause of plaintiff's noncompliance because she would have continued to provide false testimony. (Doc. 22, p. 4, n.1). This argument is speculative and, moreover, fails to address the fact that the ALJ's failure to seek additional evidence regarding plaintiff's noncompliance was in dereliction of his duty to create a record that clearly and accurately sets forth plaintiff's reasons for noncompliance as set forth by Social Security Ruling 82-59. Further, the Commissioner's argument does not recognize the

---

[1] This ruling instructs that social security claimants should be given the opportunity to explain noncompliance with treatment and that "[d]etailed questioning may be needed to identify and clarify the essential

District Judge's apt observation that the ALJ "is not limited to taking additional testimony solely from the [p]laintiff, and may request the submission of additional medical evidence to resolve the root cause of the noncompliance." (Doc. 19, p. 12).

In addition, the Commissioner contends that he was substantially justified in arguing that further questioning plaintiff about her noncompliance would not alter the medical evidence of record or its impact on the ALJ's determination as to her functionality. (Doc. 22, p. 6). This argument misses the mark. Both the undersigned and the District Judge found that the ALJ erred because he failed to create a sufficient record regarding plaintiff's medication noncompliance as required by Social Security Ruling 82-59. Regardless of whether or not further questioning of plaintiff would provide a sufficient record on the noncompliance issue, the ALJ could have sought additional medical evidence from plaintiff's treating and/or examining sources. In any event, the Commissioner's contention that eliciting further testimony from plaintiff would not alter the medical evidence is irrelevant. The ALJ's error was his failure to create a record explaining plaintiff's noncompliance and the Commissioner has not presented any argument from which this Court can conclude that this position had a reasonable basis.

Lastly, the Commissioner argues that the fact that the Court only found for plaintiff on one of her three assignments of errors is "strong proof that the government's position was justified." (Doc. 22, p. 4). In support, the Commissioner cites to *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009) ("[S]uccess on a single claim will rarely be dispositive of whether the

---

factors of refusal. The record must reflect as clearly and accurately as possible the [claimant's] reason(s) for failing to follow the prescribed treatment[.]" SSR 82-59, 1982 WL 31384, at *2 (1982).

government's overall position was substantially justified."). In *Stewart*, the Seventh Circuit held that the district court erred by *not* awarding fees to plaintiff's attorney because, despite having been successful on only one issue, the plaintiff correctly identified that the ALJ erred where the ALJ contravened longstanding agency regulations and failed to "connect the evidence to the conclusion through an 'accurate and logical bridge.'" *Id.* at 684 (quoting *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Here, the ALJ similarly did not adhere to Social Security regulations and, by determining that plaintiff did well when she took medication without relying on a supporting medical opinion, he failed to connect the record evidence to his conclusion. Contrary to the Commissioner's inference, whether plaintiff is entitled to EAJA fees is not dependent on her win/loss average but, rather, on whether the Commissioner has a reasonable basis in law and fact to challenge plaintiff's claims. *Pierce*, 487 U.S. at 565. In light of the aforementioned failures of the ALJ to adhere to Social Security regulations and create a sufficient record, the Commissioner's position that plaintiff did not win "enough" to justify an award is not substantially justified.

The Commissioner has not met his burden of proving substantial justification for his position in this case. The Court, therefore, finds that the Commissioner's position in this matter was not substantially justified.

**Special Circumstances**

No evidence in the record suggests that special circumstances bar a fee award here, and the Court, after carefully reviewing the record, finds none. *See* 28 U.S.C. § 2412(d)(1)(A).

Accordingly, the Court turns to an analysis of the amount of fees to which plaintiff's counsel is entitled.

## Calculation of Fee Award

EAJA authorizes an award of reasonable fees as follows:

> The amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines than an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).

Plaintiff requests an award of fees in the amount of $10,854.14[2] and requests hourly attorney fees ranging from $174.99 to $181.25, representing the $125.00 hourly rate set by the EAJA statute adjusted for inflation, per month, based on the cost of living increases since enactment of the EAJA. (Doc. 21, Ex. 2, Affidavit in Support of Fees). The Commissioner does not object to the requested hourly rate.

In determining the hourly rate for an attorney fee award, the Court must first consider the prevailing market rate charged by Social Security practitioners in Southwestern Ohio. *See* 28 U.S.C. § 2412(d)(2)(A) (the amount of EAJA fees "shall be based upon *prevailing market rates* for the kind and quality of the services furnished . . . .") (emphasis added). In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court noted that the critical question in determining the

---

[2] Plaintiff did not move for associated costs or expenses.

reasonableness of attorney fees is "the appropriate hourly rate." *Id.* at 895 n.11. The Supreme

Court stated:

> [T]he rates charged in private representations may afford relevant comparisons.
> In seeking some basis for a standard, courts properly have required prevailing
> attorneys to justify the reasonableness of the requested rate or rates. To inform
> and assist the court in the exercise of its discretion, the burden is on the fee
> applicant to produce satisfactory evidence – in addition to the attorney's own
> affidavits – that the requested rates are in line with those prevailing in the
> community for similar services by lawyers of reasonably comparable skill,
> experience and reputation. A rate determined in this way is normally deemed to
> be reasonable, and is referred to – for convenience – as the prevailing market rate.

*Id.*

In *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009), the Sixth Circuit

reiterated that the burden of justifying an increase in the statutory hourly rate rests with the

EAJA plaintiff. *Id.* at 450 (citing *Blum*, 465 U.S. at 898). The district court in *Bryant* indicated

that the plaintiff's burden to establish the prevailing market rate may be met through "evidence

of legal fees charged in the same geographic area for the pertinent area of practice" and that the

district court may take "judicial notice of the historical fee reimbursement rate in the district."

*Turner v. Astrue*, No. 06-450, 2008 WL 2950063, at *1 (E.D. Ky. July 30, 2008), *aff'd sub nom.,*

*Bryant*, 578 F.3d 443 (citing *London v. Hatter*, 134 F. Supp.2d 940, 941-942 (E.D. Tenn. 2001)).

The district court determined that an increase in the statutory hourly rate was not justified in the

two cases before it because the plaintiffs' counsel had failed to provide proof that the reasonable

and customary attorney fee for comparable work in the relevant geographical area exceeded

$125.00 per hour. The Court of Appeals found no abuse of discretion by the district court in

limiting the hourly rate to the $125.00 statutory rate where the plaintiffs' attorney submitted only the Department of Labor's Consumer Price Index to support the request for an increase in the statutory hourly rate based on inflation. *Bryant,* 578 F.3d at 450.

In light of *Bryant,* this Court has previously required plaintiffs' counsel to submit evidence justifying an increase in the statutory hourly rate, including evidence of counsel's own customary hourly rate, the requested cost-of-living increase, and the prevailing rate in the local community charged by Social Security practitioners of similar skill, experience, and reputation. *See, e.g., Ayers v. Astrue,* No. 1:10-cv-30, 2011 WL 5506096, at *4 (S.D. Ohio Oct. 18, 2011) (Report and Recommendation) (Bowman, M.J.), *adopted,* 2011 WL 5445927 (S.D. Ohio Nov. 10, 2011) (Barrett, J.) (awarding $170.00 per hour in EAJA fees); *Neal v. Astrue,* No. 1:08-cv-512, 2010 WL 373997, at *2 (S.D. Ohio Jan. 28, 2010) (Barrett, J.) (awarding $149.00 per hour in EAJA fees); *Sturgeon v. Commissioner of Social Security,* No. 1:08-cv-510, 2009 WL 5194385, at *4 -5  (S.D. Ohio Dec. 22, 2009) (Beckwith, J.) (awarding $170.00 per hour in EAJA fees).  In each of these cases, the plaintiff provided an affidavit of counsel, as well as copies of publications showing average billable hourly rates nationally and in Cincinnati establishing that the requested hourly rates were in line with the prevailing market rates for the relevant geographic area. *See, e.g., Ayers*, No. 1:10-cv-30, 2011 WL 5506096, at *4 (noting October 2007 study showing average billable hourly rate of $175 for the Greater Cincinnati area and 2004 report showing mean billable hourly rate of $213 for downtown Cincinnati law firms). This Court notes that more recently a 2010 Ohio State Bar Association Survey of attorney fee rates shows a mean hourly rate of $231 per hour for Greater Cincinnati, $251 per hour for

downtown Cincinnati, and $209 per hour for suburban Cincinnati. *See* The Economics of Law

Practice in Ohio, Ohio State Bar Association (found at http://www.ohiobar.org/General %20

Resources /pub/2010_ Economics _of_Law_Practice_Study.pdf). The Court can look to such

evidence of legal fees charged in the same geographic area, as well as take judicial notice of the

historical fee reimbursement rate in this district, in determining the prevailing market rate for the

case before the Court. *See Turner*, No. 06-450, 2008 WL 2950063, at *1.

In this case, the hourly rate requested by counsel is in keeping with the prevailing market

rate for the Southwestern Ohio geographic area. In light of the cases in the Southern District of

Ohio cited above, as well as the survey from the Ohio State Bar Association, the Court takes

judicial notice that the prevailing market rate in the local Cincinnati and Southwestern Ohio

communities charged by Social Security practitioners of similar skill, experience, and reputation

is at least $170.00 per hour. However, for the reasons explained below the Court has adjusted

the requested hourly fee.

Although the cost of living "has risen since the enactment of the EAJA," the decision

whether this increase justifies a fee in excess of the $125.00 statutory rate that went into effect on

March 29, 1996,[3] is a matter left within the district court's discretion. *Begley v. Sec'y of H.H.S.*,

966 F.2d 196, 199, 200 (6th Cir. 1992). The $125.00 "statutory rate is a ceiling and not a floor."

*Chipman v. Sec'y of Health & Human Servs.*, 781 F.2d 545, 547 (6th Cir. 1986). The *Begley*

Court interpreted "*Chipman* as a specific instruction not to use [$125.00] as a *minimum* hourly

---

[3] *See London v. Halter*, 203 F. Supp.2d 367, 373 (E.D. Tenn. 2001) (citing Contract with America
Advancement Act of 1996, PL 104-121, §§ 231-233).

fee and a more general command to district courts to carefully consider, rather than rubber stamp, requests for adjusted fee awards based on inflation." 966 F.2d at 200 (emphasis in original). The Court of Appeals has "neither precluded cost of living adjustments in appropriate cases, nor interfered with the authority of the district courts to decide such matters within their discretion." *Id.*

This District Court has determined that the cost of living increase should be based on the multiplier for the particular year in which compensable services were rendered (historic rates), rather than for the year in which the plaintiff filed his EAJA petition (current rates). *See Jones v. Comm'r of Soc. Sec.*, No. 1:05cv789, 2007 WL 1362776, at *4 (S.D. Ohio May 8, 2007) (Barrett, J.). *See also Fantetti v. Comm'r of Soc. Sec.*, No 1:08cv621, 2010 WL 546729, at *3 (S.D. Ohio Feb. 12, 2010) (Dlott, C.J.). In determining the increased rate to use, the Court notes that the Consumer Price Index ("CPI") is published on a monthly basis as well as on an annualized basis. Because of the computational difficulties inherent in using monthly multipliers for each of the months in which services were performed, the Court should use the cost of living multiplier applicable to the particular year in which fees were incurred. *See Marcus v. Shalala*, 17 F.3d 1033, 1040 (7th Cir. 1994); *Knudsen v. Barnhart*, 360 F. Supp.2d 963, 974 (N.D. Iowa 2004); *Gates v. Barnhart*, 325 F. Supp.2d 1342, 1347 (M.D. Fla. 2002). In the event an annualized multiplier is not available for the latest year in which services were performed, the Court should average the monthly multipliers for each of the applicable months in the latest year to produce a multiplier for that year. *See Knudsen,* 360 F. Supp.2d at 975; *Gates*, 325 F. Supp.2d at 1347.

Applying these principles to the instant case, the Court notes that plaintiff has requested a cost of living increase for services rendered after March 29, 1996, the date the statutory rate increased from $75.00 to $125.00. The Court finds that an increase in the statutory $125.00 fee is appropriate, given the nature of the case in question and the increase in the cost of living since the amendment of EAJA. Plaintiff has requested eight distinct hourly rates based on the CPI for all urban consumers.[4] However, plaintiff cites to no authority for applying the CPI for this category, and the Court is not aware of any EAJA cases where the CPI for all urban consumers has been applied. Instead, judges in this district have applied the CPI for either Services or All Items in calculating the appropriate cost of living increase. *See Adkins v. Comm'r of Soc. Sec.*, No. 1:07cv073, 2011 WL 2020647, at *2 (S.D. Ohio May 24, 2011) (Barrett J.) (recognizing discrepancy among decisions and citing cases).[5] The Court in *Adkins* determined that the appropriate index is that found in the "All Items" category; thus, the undersigned shall apply the CPI for All Items in the instant case. *Id.*

Plaintiff seeks attorney fees for work performed in 2010 and 2011. Plaintiff has requested eight distinct fees based on monthly multipliers rather than applying the annual multipliers for 2010 and 2011. As this is not the preferred method of calculating a fee award, the Court will apply the annual multipliers for 2010 and 2011 in the instant matter. *See Marcus*, 17 F.3d at 1040; *Knudsen*, 360 F. Supp.2d at 974; *Gates*, 325 F. Supp.2d at 1347. Further, the

---

[4] Plaintiff does not specify whether the requested rate is based on the CPI for Services or All Items.

[5] The Court in *Adkins* used the CPI index for the Midwest region without addressing whether it was appropriate to use this index as compared to the U.S. City average index given that the Commissioner did not object to the use of the regional index. *Id.* at *1, n.2. This Court will likewise use the CPI indices for the Midwest region in the present case.

hourly rates proposed by plaintiff exceed the CPIs for the relevant time periods as they are based

on the CPI for all urban consumers and not the preferred CPI for All Items for the Midwest urban

area.[6] Consequently, the Court will set the hourly rate for work performed in 2010 at $171.43

and for work performed in 2011 at $176.49.

The Court also considers the affidavit of plaintiff's counsel which sets forth counsel's

credentials and extensive experience handling Social Security disability cases. (Doc. 21, Ex. 2).

The Court finds this information amply demonstrates that the hourly rates of $171.43 and

$176.49 are reasonable and warranted given the cost of living increases since enactment of the

EAJA and the rates prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation. *See Bryant,* 578 F.3d at 450.

Plaintiff has not requested an increase in the rate based upon any "special factor." *See* 28

U.S.C. § 2412(d)(2)(A). Accordingly, the Court need not address the "special factor" inquiry.

The Court next turns to a discussion of the applicable hours plaintiff's counsel worked

relative to the sentence four remand, *i.e.,* the time to which the hourly rates of $171.43 and

$176.49 shall be applied. Counsel for plaintiff submits that 61.25 hours of attorney time was

spent on this case before the District Court. The Commissioner challenges this number as

unreasonable on various ground: (1) plaintiff's attorney co-mingled various activities into single

billing entries: (2) the time spent preparing the Statement of Errors was excessive; (3) the time

spent preparing the complaint was excessive; (4) plaintiff should not be awarded fees for filing a

---

[6] The amounts sought by plaintiff for work performed in 2010 and 2011 exceed the statutory rates of
$171.43 based on the 2010 CPI for All Items for the Midwest urban area (2010 CPI of 208.046 divided by March

motion for extension of time; and (5) plaintiff should not be awarded fees for work done on his unsuccessful objection to this Court's Report and Recommendation. (Doc. 22, pp. 7-8). The Court will address each argument in turn.

First, the Commissioner challenges two specific billing entries from October 1, 2010 and April 7, 2011 on the ground the entries co-mingle various activities. *See* Doc. 21, Ex. 2 ("10/1/10: File 30 day extension request, continue error review . . . 4/7/11: Further R. & R. review, contact client, begin Objections."). Essentially, plaintiff's counsel has engaged in "block billing." "[B]lock billing refers to the 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 n.9 (10th Cir. 1998) (internal citations and quotations omitted). Block billing is not impermissible and, though courts have reduced fee awards for the practice, "they have done so not to punish a disfavored billing practice, but to allay suspicions about whether all of the work claimed was actually accomplished or whether it was necessary." *Richards v. Johnson & Johnson*, No. 2:08cv279, 2010 WL 3219138, at *9 (E.D. Tenn. May 12, 2010) (internal citations and quotations omitted). *See Robinson*, 160 F.3d at 1284-85 (addressing that "sloppy and imprecise" block billing can raise suspicion and "camouflage" an attorney's work). Here, however, plaintiff's counsel's billing sheet is not sloppy or imprecise and the Court can discern the type of work that was done and that such work was necessary to the litigation. Further, there is no indication that plaintiff's

---

1996 CPI of 151.7 multiplied by $125.00) and $176.49 based on the average 2011 CPI for All Items for the Midwest urban area (average 2011 CPI of $214.19 divided by March 1996 CPI of 151.7 multiplied by $125.00).

attorney inflated hours for any specific entry. *See Fair Housing Advocates Assoc. Inc. v. Terrace Plaza Apartments*, No. 2:03cv563, 2007 WL 445477, at *5 (S.D. Ohio Feb. 6, 2007) (declining to reduce fees on basis of block billing where court was able to determine that the work done was compensable); *Cummings, Inc. v. BP Prods. N.A., Inc.*, Nos. 3:06-0890, 3:07-0834, 2010 WL 796825, at *6 (M.D. Tenn. Mar. 3, 2010) (same). Here, the Court is able to ascertain the compensable work done despite the two instances of block billing. Accordingly, the Court declines to reduce the hours on the basis of plaintiff's counsel's billing practices.

Second, the Commissioner asserts that the time spent preparing the Statement of Errors (Doc. 11) and related reply (Doc. 13) was excessive. The Commissioner asserts that 29.5 hours were spent preparing the Statement of Errors, but it is unclear how the Commissioner arrived at that number. Upon review of the billing sheet, it appears that plaintiff's attorney spent 12.25 hours reviewing and outlining the transcript documents and 15.25 hours drafting the Statement of Errors for a total of 27.5 hours. *See* Doc. 21, Ex. 2, p. 4. The issue, thus, is whether it was unreasonable to spend 27.5 hours preparing the Statement of Errors and 10.25 hours on the reply.[7]

The EAJA allows an award of reasonable attorney fees. 28 U.S.C. § 2412(d)(2)(A). Whether fees are reasonable requires a consideration of the totality of the circumstances. *Blanchard v. Bergeron*, 489 U.S. 87, 94-95 (1989). In determining the reasonableness of a fee request, courts should consider "individual characteristics, including, but not limited to, the complexity of the case or the novelty of the issues" and the experience of the attorney. *Glass v.*

16

*Sec'y of H.H.S.*, 822 F.2d 19, 22 (6th Cir. 1987). The Court finds that, although the issues

presented in the case were not inordinately complex or novel, plaintiff's attorney had a duty to

carefully review the more than 440 pages of the administrative transcript in this case and

thoroughly prepare his briefs. The Court finds that 27.5 hours spent in preparation of filing a

Statement of Errors and 10.25 hours spent on the reply were reasonable. *See Dent v. Astrue*, No.

07-2238, 2008 WL 2278844, at *3 (W.D. Tenn. May 30, 2008) (holding that 27.5 hours spent

preparing a Statement of Errors and 10 hours on reply brief reasonable).[8] The Commissioner

does not assert what a reasonable number of hours would be and his contention that the time

spent by plaintiff's attorney was excessive is unsupported and speculative. As the Commissioner

has presented no basis in law or fact upon which the Court should base a decision to reduce the

hours sought for compensation by counsel for plaintiff, the Court declines to arbitrarily reduce

the hours plaintiff's attorney spent preparing and drafting the Statement of Errors and reply.

Regarding the Commissioner's third argument, that plaintiff's attorney spent an

unreasonable amount of time preparing the complaint, the Court finds that spending 1.25 hours

to prepare and draft two documents, including service of process documents and the associated

filing time, is not excessive. Accordingly, the Court declines to reduce these hours.

The Commissioner's fourth argument is that plaintiff's counsel should not be

compensated for the time spent preparing a motion for an extension of time. The Court takes

---

[7] The Commissioner does not challenge any other work or hours as excessive.

[8] *See also Watkins v. Astrue*, No. 1:05cv322, 2007 WL 5243229, at *5 (E.D. Tenn. Aug. 3, 2007) (concluding that 43.6 hours of time spend researching and drafting briefs, including 5.8 hours of time spent drafting objections, was not excessive); *Grooms v. Comm'r of Soc. Sec.*, No. 2:08-14189, 2011 WL 4536886, at *2-3 (E.D. Mich. Sept. 30, 2011) (holding that 62 hours of attorney time spent on entirety of social security case was

judicial notice that counsel for both plaintiffs and the Commissioner routinely request extensions of time in Social Security matters in light of their heavy caseloads and other commitments. However, as the Court is unable to discern, due to plaintiff's attorney's billing statement,[9] whether the time spent preparing the extension request was reasonable and, as the Commissioner filed no motions for extensions in this matter, the Court finds that a reduction of time is appropriate. *See Stanley v. Astrue*, No. 3:09cv498, 2011 WL 1691836, at *2 (S.D. Ohio May 4, 2011) (deducting time spent on extension request). Accordingly, the Court will reduce one hour from plaintiff's total requested 61.25 hours, for a total of 60.25 hours.

The Commissioner's final argument in support of a reduction of plaintiff's attorney's hours is that fees should not be awarded for work done on plaintiff's unsuccessful challenge to this Court's Report and Recommendation. This argument is well-taken. *See Sommers v. Comm'r of Soc. Sec.*, No. 09cv1183, 2011 WL 5361074, at *3 (N.D. Ohio Sept. 16, 2011) (reducing time spent by plaintiff's counsel in preparing unsuccessful objections to Magistrate Judge's recommendation to remand); *Staggs v. Astrue*, No. 3:09cv5374, 2011 WL 2162707, at *5 (W.D. Wash. Apr. 28, 2011) (same). Accordingly, the Court will reduce the six hours of work done by plaintiff's counsel from April 12 to 18, 2011[10] preparing and filing the unsuccessful objection. However, the Court will not deduct the time spent by plaintiff's counsel on April 7, 2011 reviewing the Report and Recommendation as "[i]t is prudent for counsel to

---

reasonable).
   [9] *See* Doc. 21, Ex. 2, p. 5 ("10/1/10: File 30 day extension request, continue error review . . . 2.25 hr.").
   [10] *See* Doc. 21, Ex. 2, p. 5.

review a report and recommendation to assess the need for objections[.]" *Titus v. Astrue*, No. 1:08cv2093, 2009 WL 4730588, at *6 (N.D. Ohio Dec. 4, 2009).

In light of the above findings, the Court finds that plaintiff is entitled to attorney's fees for 41 hours of work done in 2010 at an hourly rate of $171.43 yielding $7,028.63 and for 13.25 hours of work done in 2011 at an hourly rate of $176.49 yielding $2,338.49 for a total of $9,367.12. As plaintiff has assigned her award directly to her counsel, *see* Doc. 21, Ex. 1, Plaintiff's Affidavit and Assignment of EAJA Fee, the Commissioner should be directed to pay plaintiff's EAJA award directly to her counsel of record. *See Steele-Malocu v. Astrue*, No. 3:09cv383, 2011 WLJ 1742112, at *5 (S.D. Ohio Apr. 1, 2011) (awarding fee directly to plaintiff's attorney is appropriate where there is no evidence that plaintiff has pre-existing debt).[11]

The Court therefore **RECOMMENDS** that the EAJA fee petition be **GRANTED** and that plaintiff be **AWARDED** $9,367.12 in attorney fees payable directly to plaintiff's counsel of record.

Date: 12/7/2011

Karen L. Litkovitz
United States Magistrate Judge

---

[11] The *Steele-Malocu* Court addressed the holding of *Astrue v. Ratliff*, __ U.S. __, 130 S.Ct. 2521, 2529 (2010), where the Supreme Court held that EAJA fees should be awarded directly to a plaintiff and held that where there is no evidence that "[p]laintiff owes [the government] a pre-existing debt, no ripe *Ratliff* issue exists. This conclusion is confirmed by *Ratliff* itself, where the government sought an EAJA offset based on its knowledge that the plaintiff owed it a debt that pre-dated the district court's approval of the EAJA award." *Id.* (citing *Ratliff*, 130 S.Ct. at 2424-25).

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BARBARA J. RENNEKER,
Plaintiff

Case No. 1:10-cv-386
Beckwith, J.
Litkovitz, M.J.

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

20